MICHAEL C. ORMSBY
United States Attorney
Eastern District of Washington
JAMES A. GOEKE
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

APR 01 2014

SEAN F. McAVOY, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

vs.

ADAM CHARLES WELLBORN,

Defendant.

No.: 2:14-CR-0032-JLQ-1

PLEA AGREEMENT

Plaintiff, United States of America, by and through Michael C. Ormsby, United States Attorney for the Eastern District of Washington, and James A. Goeke, Assistant United States Attorney for the Eastern District of Washington, and Defendant ADAM CHARLES WELLBORN and the Defendant's counsel, Robert Fischer, agree to the following Plea Agreement:

1.    Guilty Plea and Maximum Statutory Penalties:

The Defendant ADAM CHARLES WELLBORN agrees to plead guilty to Count 1 of the Indictment in this case charging the Defendant with:  Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2).  The Defendant understands that Count 1 of the Indictment alleging Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2), is a Class D felony which carries a term of up to 7 and a half years imprisonment; a fine not to exceed $250,000;

PLEA AGREEMENT - Page 1 of 12

not more than 3 years of supervised release; restitution; and a $100.00 special penalty assessment. Defendant ADAM CHARLES WELLBORN understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2.    The Court is Not a Party to the Agreement:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement.  Sentencing is a matter that is solely within the discretion of the Court.  The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter.  The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing this plea of guilty.

3.    Waiver of Constitutional Rights:

The Defendant, ADAM CHARLES WELLBORN, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a).    The right to a jury trial;

(b).    The right to see, hear and question the witnesses;

(c).    The right to remain silent at trial;

PLEA AGREEMENT - Page 2 of 12

(d).    The right to testify at trial; and

(e).    The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4.    Elements of the Offense:

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2), the United States would have to prove beyond a reasonable doubt the following elements:

(a)    First, beginning on or about August 15, 2013 and continuing to on or about September 3, 2013, in the Eastern District of Washington, there was an agreement between two or more persons to commit at least one crime as charged in the Indictment (to wit, to effect illegal transactions with an access device issued to another person, in violation of 18 U.S.C. § 1029(a)(5));

(b)    Second, the Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it (to wit, to obtain money from the bank account of another using an access device); and,

(c)    Third, the Defendant performed at least one overt act for the purpose of carrying out the conspiracy (to wit, the Defendant made multiple withdrawals of money and point of sales transactions using an illegally acquired access device during the course of the conspiracy).

5.    Factual Basis and Statement of Facts:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant ADAM CHARLES WELLBORN's guilty plea:

On August 15, 2013, an individual (the Account Holder) with no connection to ADAM CHARLES WELLBORN and BRITTANY JEAN SCHAEFFER opened a bank account at Cashmere Valley Bank. Cashmere Valley Bank then sent the Account Holder a bank debit card (an access device under 18 U.S.C. § 1029) and a personal identification number (PIN) in the United States Mail. ADAM CHARLES WELLBORN and BRITTANY JEAN SCHAEFFER subsequently acquired the Account Holder's bank debit card and PIN through ADAM CHARLES WELLBORN's theft of the same from the account holder's mailbox. At no time from August 15, 2013 through September 3, 2013 did ADAM CHARLES WELLBORN and BRITTANY JEAN SCHAEFFER have permission or lawful authority to possess and use the Account Holder's bank debit card or to access the Account Holder's bank account with the Account Holder's PIN.

On August 26, 2013, BRITTANY JEAN SCHAEFFER activated the Account Holder's bank debit card using the Account Holder's initial PIN, allowing ADAM CHARLES WELLBORN and BRITTANY JEAN SCHAEFFER to make deposits, withdrawals, and point of sale transactions using the Account Holder's bank debit card. ADAM CHARLES WELLBORN was with BRITTANY JEAN SCHAEFFER when SCHAEFFER activated the Account Holder's bank debit card.

Beginning on August 26, 2013 and continuing through September 3, 2013, and ADAM CHARLES WELLBORN and BRITTANY JEAN SCHAEFFER made approximately 17 deposits totaling approximately $7,000 into the Account Holder's Cashmere Valley Bank account using stolen checks (also acquired from mailboxes around the Wenatchee area by ADAM CHARLES WELLBORN). The stolen checks

PLEA AGREEMENT - Page 4 of 12

were altered to reflect the Account Holder's name rather than the legitimate payees the various legitimate Account Holders had intended. The point of the deposits was to increase the value of the bank account related to the bank debit card to allow ADAM CHARLES WELLBORN and BRITTANY JEAN SCHAEFFER to maximize cash withdrawals and point of sale purchases until the fraud was discovered. ADAM CHARLES WELLBORN and BRITTANY JEAN SCHAEFFER then made numerous cash withdrawals and point of sale purchases using the bank debit card totaling over $6,000. The withdrawals and point of sale transactions made by ADAM CHARLES WELLBORN and BRITTANY JEAN SCHAEFFER were conducted in the Wenatchee area.

This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

6.    The United States Agrees:

(a.)    Not to File Additional Charges:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this First Superseding Indictment, unless the Defendant breaches this Plea Agreement any time before sentencing.

7.    United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG" or "Sentencing Guidelines") are applicable to this case and that the Court will determine the Defendant's applicable Sentencing Guidelines range at the time of sentencing. The following calculations are the estimates of the United States and the Defendant. The Defendant understands that the Court is not bound by these estimates.

(a.)    Base Offense Level:

The United States and the Defendant agree that the base offense level for a violation of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2) is 6 pursuant to USSG §2B1.1(a)(2).

(b.)    Guideline Adjustments:

The United States and the Defendant agree that the following enhancements appear to apply:

- 2 level enhancement pursuant to §2B1.1(b)(1)(B) for a loss of more than $5,000;
- 2 level enhancement pursuant to USSG §2B1.1(b)(2)(A) for 10 or more victims; and,
- 2 level enhancement pursuant to USSG §2B1.1(b)(11) for possession and use of an authentication feature (also resulting in a minimum offense level of 12 pursuant to the USSG);

The United States and the Defendant may advocate for any additional enhancements and/or reductions to the base offense level each party believes appropriate.  The parties reserve the right under this Plea Agreement to oppose or support any adjustment to the base offense level.

(c.)    Acceptance of Responsibility:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and provides written notification that he intends to enter a plea of guilty no later than March 28, 2014, the United States will move for a two (2) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to USSG §3E1.1(a) based on an estimated adjusted offense level of 12 before consideration of acceptance of responsibility.  The United States agrees to move for an additional one (1) level

PLEA AGREEMENT - Page 6 of 12

downward adjustment pursuant to USSG §3E1.1 (b) if the Court determines the Defendant's adjusted offense level is 16 or higher.

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a two (2) or three (3) level downward reduction for acceptance of responsibility (depending on the Defendant's underlying adjusted offense level) if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment for each count of conviction to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

(d.)    Criminal History:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Pre-Sentence Investigative Report ("PSR"). As of this date, the facts regarding the Defendant's criminal history are related in the Pretrial Services Report in this case. The United States and the Defendant have made no agreement as to the criminal history category, which shall be determined after the PSR is completed, but the parties note that based on the history reflected in the Pretrial Services Report, the Defendant's criminal history appears to be level I.

(e.)    Guideline Range:

Based on the calculations set forth above in this paragraph, the United States believes the Defendant faces an adjusted sentencing range under the USSG of 6-12 months incarceration based on an adjusted offense level of 10 and a criminal history category of I. An adjusted offense level of 10 and a criminal history category of I

PLEA AGREEMENT - Page 7 of 12

would place the Defendant in Zone B of the Sentencing Table. Again, the Defendant understands that the Court will ultimately determine the applicable sentencing guideline range and is not bound to follow the recommendations of the parties and that the Court may also depart or vary upward or downward under the appropriate circumstances from the applicable advisory sentencing range.

8.    Departures:

The parties have no agreement regarding upward or downward departures. The Defendant is free to argue for any applicable downward departure and/or for any sentence adjustment, sentence factor, and sentence variance under 18 U.S.C. § 3553. The United States is likewise free to argue for any applicable upward departure and/or for any sentence adjustment, sentence factor, and sentence variance under 18 U.S.C. § 3553.

9.    Incarceration:

(a).    Length of Imprisonment:

The United States agrees to recommend a sentence of imprisonment within the applicable range under the Sentencing Guidelines as established by the Court. The United States agrees to recommend that the Defendant receive credit for all time previously served while awaiting trial. The Defendant is free to recommend any sentence he deems appropriate.

(b).    Bureau of Prison Recommendations:

The United States Attorney's Office for the Eastern District of Washington acknowledges that the Defendant may intend to request the Court to write a letter to the United States Bureau of Prisons recommending that the Defendant be allowed to serve any sentence of imprisonment (if applicable) at a specific institution. The Defendant understands that any decision concerning the Defendant's place of incarceration is within the exclusive province of the Bureau of Prisons.

10.   Criminal Fine:

The United States and the Defendant have no agreement concerning a criminal fine. The United States is free to advocate for a criminal fine and the Defendant is free to oppose a criminal fine.

11.   Supervised Release and/or Probation:

The Defendant understands that if the Court sentences the Defendant to a term of imprisonment, the United States will request a maximum term of supervised release to include the following special condition, in addition to whatever other special conditions the Court may impose and in addition to the standard conditions of supervised release: the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer.

The Defendant also understands that if the Court sentences the Defendant to a term of probation, the United States will request the following special condition, in addition to whatever other special conditions the Court may impose and in addition to the standard conditions of probation: the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer. The Defendant also understands that if the Court imposes a term of probation, the United States will seek the maximum term of probation under the law.

The United States is free to recommend additional special conditions of supervision (either under supervised release or probation) at the time of sentencing and during the period of supervised release and/or probation. The Defendant is free to oppose any additional conditions of supervision at the time of sentencing and during the period of supervised release and/or probation and is free to make any recommendation concerning the length of his supervised release term and/or probation.

12.   Mandatory Special Penalty Assessment:

The Defendant agrees to pay the $100 mandatory special penalty to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18

PLEA AGREEMENT - Page 9 of 12

U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

13.    Payments While Incarcerated:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

14.    Restitution:

The Defendant understands that the United States intends to seek restitution in this case. The Defendant agrees to a Restitution Order for the amount of the victims' losses as determined by the Court for the offenses of conviction in this Plea Agreement and the offenses that gave rise to the Plea Agreement. The United States and the Defendant are free to make any arguments they wish concerning the appropriate amount of restitution the Court should order in this case.

15.    Additional Violations of Law Can Void Plea Agreement:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

16.    Waiver of Appeal and Collateral Attack Rights:

The Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court. The Defendant hereby expressly waives his right to appeal his conviction and the sentence the Court imposes not in excess of the applicable Guideline range, including any restitution order. The Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information

PLEA AGREEMENT - Page 10 of 12

not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

17.    Integration Clause:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

MICHAEL C. ORMSBY
United States Attorney

_____          4/01/14
JAMES A. GOEKE                            Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in

///
///
///
///

PLEA AGREEMENT - Page 11 of 12

1  any way to enter into this Plea Agreement.  I am agreeing to plead guilty because I am

2  guilty.

3  _____          4-1-14

4  ADAM CHARLES WELLBORN                      Date
   Defendant

5      I have read this Plea Agreement and have discussed the contents of the

6  agreement with my client.  The Plea Agreement accurately and completely sets forth

7  the entirety of the agreement between the parties.  I concur in my client's decision to

8  plead guilty as set forth in the Plea Agreement.  There is no legal reason why the

9  Court should not accept the Defendant's plea of guilty.

10 _____          04/01/14

11 Robert Fischer                             Date
   Attorney for the Defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT - Page 12 of 12